NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0315n.06

No. 23-3886

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 19, 2024
KELLY L. STEPHENS, Clerk

PATRICK MCGAIL,

    Petitioner-Appellant,

v.

BILL COOL, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

OPINION

Before: SILER, COLE, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. A jury convicted Patrick McGail of multiple offenses related to his participation in an armed home invasion, and the state court sentenced him to a minimum of twenty-four years' imprisonment. Following his conviction, one juror claimed that her verdict was swayed by a comment from the jury foreman that was made during deliberations and was not entered into evidence. McGail filed a habeas petition under 28 U.S.C. § 2254, alleging that the jurors' consideration of the comment violated his rights under the Sixth Amendment to the United States Constitution. The district court dismissed the petition after concluding that the state court reasonably found that the foreman's comment was not prejudicial. For reasons that follow, we affirm.

**I.**

In October 2013, McGail, Jason Sowers, and Brendon Terrel broke into Nathan Wintrow's home to steal marijuana. *See State v. McGail*, 55 N.E.3d 513, 519 (Ohio Ct. App. 2015). While Terrel acted as a lookout, McGail and Sowers entered the home through a back door while wearing

masks and carrying guns. Once they encountered Wintrow, a fight broke out. Sowers fatally shot Wintrow during the altercation. While surveying the crime scene, police found a "survival knife that had been given to McGail by his deceased grandfather, a shoe, a handgun, and a white mask." *State v. McGail*, 167 N.E.3d 70, 72 (Ohio Ct. App. 2021). McGail's DNA was on the knife and gun. And Sowers and Terrel admitted that McGail was involved in the armed invasion when speaking with police.

In December 2013, a grand jury indicted McGail for two counts of murder under Ohio Rev. Code § 2903.02(B), one count of aggravated burglary under Ohio Rev. Code § 2911.11(A)(2), and one count of aggravated robbery under Ohio Rev. Code § 2911.01(A)(1). McGail testified in his defense at trial. He claimed that he was aware of the plan to rob Wintrow, but he thought that his co-conspirators were "joking." *McGail*, 167 N.E.3d at 72. He claims he backed out once he realized his friends were serious about their plan, leaving his knife and mask behind.

McGail also presented evidence of his good character. He testified that he attended St. Patrick's Church when he was growing up, and that "church and school" were the "most important things" for him and his family. *Id.* at 73; McGail Test., No. 3:17-CV-251, R. 11-6, PageID 1933. Autumn Kunkle, McGail's sister, and Diane Mengos, the church's youth ministry director, also testified that McGail was actively involved in the church. Mengos noted several of the activities that McGail participated in when he was young, such as the church festival, nursing home visits, collecting coins for St. Vincent DePaul, and playing percussion in the church's contemporary choir. *McGail*, 167 N.E.3d at 73. Pictures documenting McGail's church involvement were admitted into evidence.

The jury convicted McGail on all counts. Two weeks later, he moved for a mistrial or, in the alternative, an evidentiary hearing, claiming that the jury "considered testimony not presented

during trial to impeach" his credibility. Mot. for Mistrial, No. 3:17-CV-251, R. 11, PageID 262. He attached the affidavit of juror Kylie Spiers, who claimed that jury foreman David Westgerdes told the jury "that [Westgerdes] goes to St. Patrick's church[,] the same church that Patrick McGail testified going to[,] and that he had never seen Patrick or his family at that church, so he must be lying." *Id.*, PageID 263. She claimed that her "decision was influenced to vote 'Guilty' when" she heard Westgerdes's comment. *Id.*

The trial court denied McGail's motion under Ohio Evidentiary Rule 606(B), which prevents state courts from considering a "juror's affidavit alleging misconduct of another juror" without "evidence of juror misconduct . . . offered from sources other than jurors themselves." Order Denying Mot. for Mistrial, No. 3:17-CV-251, R. 11, PageID 272. The court held that insufficient evidence supported McGail's claim of juror misconduct because he failed to submit evidence beyond Spiers's affidavit, and that "there is no reason to have a hearing regarding alleged juror misconduct." *Id.*, PageID 273. The state appellate court affirmed for the same reason, and added that in any event, McGail did not establish prejudice.

McGail challenged that decision in his first habeas petition, filed in July 2017. The district court held that the state court's exclusion of Spiers's affidavit under Rule 606(B) violated clearly established law because a defendant's "constitutional right to a fair trial" encompasses the right to confront the evidence presented against him in open court. *McGail v. Noble*, No. 3:17-CV-251, 2018 WL 5984055, at *4 (S.D. Ohio Nov. 14, 2018) (citing *Doan v. Brigano*, 237 F.3d 722, 733 (6th Cir. 2001)). The district court remanded the case, directing the state trial court to hold an evidentiary hearing to determine "what the jury foreperson said about McGail and/or his family's church attendance . . . and its impact on the jury and its members." *Id.* at *8.

Westgerdes testified at the evidentiary hearing, confirming that he commented during deliberations that he attends St. Patrick's, but that he had "not [seen McGail] in church lately." Westgerdes's Test., No. 3:22-CV-119, R. 6-1, PageID 367. He clarified that he believed McGail had been in church at some time before "because there was evidence he was in the choir and such." *Id.* Of the eleven jurors who testified, five (including Spiers) claimed that they heard Westgerdes's statement. The other six did not remember hearing anything.

After reviewing testimony from the evidentiary hearing, the state trial court found that the foreman likely said that he had not seen McGail in church "lately"; not that he had "never" seen McGail in church. *Id.*, R. 14, PageID 685. The court found that it "defies logic" for Westgerdes to have said that he had never seen McGail at St. Patrick's because the jury was presented with photographs documenting McGail's involvement. *Id.* The court also relied on testimony from Westgerdes to that effect. *Id.* (citing Westgerdes's Test., R. 6-1, PageID 372 (stating that "it was evident [McGail] was in church [because] [the jury] had pictures" of his participation)).

The state trial court further held that McGail failed to establish that the comment prejudiced the outcome of his trial. The court considered whether the unconstitutional comment was likely to influence the verdict of "a rational juror and not the individual juror in the case." No. 3:22-CV-119, R. 14, PageID 690 (citing *United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir. 2006)). Applying that standard, the court found no prejudice because the comment was "made in passing," "consisted of one sentence that was not discussed by the jury as a whole," and because no juror aside from Spiers testified that the comment influenced the jurors' verdict. *Id.*, PageID 691. The court also found that Spiers's affidavit lacked credibility because her statements contradicted her later testimony and testimony from the other jurors, and because Spiers had a personal relationship with McGail's trial counsel that motivated her to impeach her verdict. The state appeals court

affirmed, holding that the trial court's determination that McGail's trial was not prejudiced by Westgerdes's comment was "amply supported," and its "conclusion that Spiers's testimony was not credible was not unreasonable." *McGail*, 167 N.E.3d at 90–91. The Ohio Supreme Court declined review. *State v. McGail*, 167 N.E.3d 981 (Ohio 2021) (table).

McGail filed his second habeas petition in May 2022, arguing that the state court erred in holding that Westgerdes's comment was not prejudicial. The magistrate judge recommended denying the petition because the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. The district court adopted the magistrate judge's recommendation over McGail's objections, but it granted McGail a certificate of appealability.

**II.**

McGail advances a single claim on appeal: that the jury's "improper consideration of extrinsic evidence" was "prejudicial error" that requires vacating his conviction. Pet'r's Br. at 2. We review the district court's denial of McGail's habeas petition de novo. *Garcia v. Andrews*, 488 F.3d 370, 373 (6th Cir. 2007). The Antiterrorism and Effective Death Penalty Act (AEDPA) "requires federal courts sitting in habeas review to grant the state court's decisions great deference." *Hand v. Houk*, 871 F.3d 390, 407 (6th Cir. 2017). A petitioner is not entitled to relief under AEDPA unless he can show that the state court's on-the-merits decision is (1) contrary to, or involves an unreasonable application of, clearly established Supreme Court precedent, or (2) is based on an "unreasonable determination of the facts." 28 U.S.C. §§ 2254(d)(1), (2); *Fields v. Jordan*, 86 F.4th 218, 240 (6th Cir. 2023) (en banc).

Under the first prong, a state court's application of Supreme Court precedent is "objectively unreasonable" if it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*

*v. Richter*, 562 U.S. 86, 103 (2011). And a state court's factual findings are "entitled to a presumption of correctness" that may be rebutted "only by clear and convincing evidence" that its determination was erroneous. *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018) (citing 28 U.S.C. § 2254(e)(1)).

The parties agree that McGail's claim was adjudicated on the merits. They also agree that the jury's consideration of Westgerdes's comment, which was made during deliberations and not subject to cross examination, was unconstitutional. *See Parker v. Gladden*, 385 U.S. 363, 363–65 (1966) (per curiam) (holding that a bailiff's private comment to jurors that the "wicked" defendant was guilty violated the Confrontation Clause). On appeal, McGail challenges only the state court's holding that the foreman's comment was not prejudicial. Specifically, he argues that AEDPA deference does not apply to the holding regarding prejudice because the trial court's decision was both legally and factually erroneous.

*Legal Error.* McGail first claims that the state trial court applied the wrong legal standard when assessing the prejudicial effect of Westgerdes's statement. Pet'r's Br. at 14–18. He claims that the state court erred by considering the "subjective reports of individual jurors concerning the perceived impact of the improper extrinsic evidence," when it should have looked to "whether the statement would have impacted a hypothetical average juror." *Id.* at 16–17.

The Supreme Court has held that a constitutional error is not harmless where, "in light of the record as a whole," it "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (citation omitted). And McGail is correct that when assessing prejudice, we consider the "nature of the extraneous material and its likely effect on the hypothetical average jury." *Fletcher v. McKee*, 355 F. App'x 935, 939 (6th Cir. 2009) (internal quotation marks and citation omitted).

The state trial court reasonably applied those standards here. The Ohio court surveyed the jurors' testimony at the evidentiary hearing and found that, of the jurors who heard Westgerdes's comment, none but Spiers indicated that the statement impacted the outcome of the case. Contrary to McGail's claim, the trial court was not conducting a subjective analysis when it reviewed individual juror testimony; rather, the court found that the jurors' testimony provided the "context of the discussion" and was representative of a "reasonable and a rational[] juror['s]" response to Westgerdes's comment. No. 3:22-CV-119, R. 14, PageID 692–93. The consideration of aggregated juror testimony as evidence of an objective juror's response to extrinsic evidence comports with the objective standard articulated by the Supreme Court. *See United States v. Greer*, 285 F.3d 158, 173 (2d Cir. 2002) (explaining that when determining how an objective juror would have responded to extrinsic evidence courts may consider the specific circumstances of how the extrinsic evidence was introduced). Like the individual jurors did here, a "rational juror would evaluate the evidence to establish the weight it should be given," if any. No. 3:22-CV-119, R. 14, PageID 693.

McGail cites *Holbrook v. Flynn* to support his claim that the state trial court misapplied Supreme Court precedent. 475 U.S. 560 (1986). In *Holbrook*, the Supreme Court held that courts should not look to "whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *Id.* at 570 (quoting *Estelle v. Williams*, 425 U.S. 501, 505 (1976)). The Court there asked whether the presence of troopers in the courtroom was "inherently prejudicial," and found that questioning individual jurors may not be probative because the jurors would not perceive any prejudice resulting from the practice. *Id.* Importantly, the *Holbrook* Court did not state that individual juror responses are never probative of prejudice. Instead, it remarked that jurors' individual perceptions

of prejudice are less helpful in certain circumstances, such as when jurors are unaware of prejudicial impact. It therefore was not objectively unreasonable for the state trial court to consider jurors' individual responses as probative of prejudice "from the perspective of a rational juror, not the individual juror in the case."[1] *McGail*, 167 N.E.3d at 85.

*Factual Error.* McGail next criticizes the state court's factual findings, arguing that AEDPA deference should not apply because the trial court unreasonably determined that Westgerdes said that he had not seen McGail in church "lately." Pet'r's Br. at 18–20. He claims that the evidence, including transcripts from the evidentiary hearing, "overwhelmingly showed" that Westgerdes said that he had never seen McGail at church. *Id.* at 19.

McGail has failed to show that the state court decision was based on any objectively unreasonable fact findings. The trial court acknowledged that three of the jurors who heard the comment stated that Westgerdes said he had never seen McGail in church. But two other jurors did not qualify Westgerdes's statement at all, one of whom could not remember that Westgerdes was the juror who had made the comment in the first place. Additionally, at the evidentiary hearing, one of the jurors who had previously signed an affidavit stating Westgerdes said that "he had never [seen] Patrick or his family at church," could no longer remember that the jury had even discussed the church during its deliberations. No. 3:22-CV-119, R. 6-3, PageID 433. Given that the jurors' recollection was foggy at best, and considering that they reviewed photographs of McGail's participation in church activities as a teenager, the trial court concluded that Westgerdes likely did not say he had never seen McGail in church. That conclusion was supported by

---

[1] As the Warden notes, McGail has changed his position on which standard should apply when evaluating prejudice. Resp't Br. at 24 n.5. On direct appeal, he urged the Ohio Appeals Court to consider Spiers's affidavit as conclusive evidence of prejudice, noting that "[a] good indicator, possibly the best, for how a hypothetical juror may react to extrajudicial evidence is how an actual juror herself responded to the extrajudicial evidence." No. 3:22-CV-119, R. 14, PageID 729.

Westgerdes's testimony that he would not have said that he never saw McGail at church, because "there was evidence that he was in the choir and such." *McGail*, 167 N.E.3d at 79–80 (citing No. 3:22-CV-119, R. 6-1, PageID 367). McGail fails to show how the trial court's factual findings, when viewed in light of the record as a whole, were unreasonable.

The state court's ruling survives AEDPA's standards. The court's finding that the average, rational juror would not have been influenced by Westgerdes's comment was amply supported. Its survey of juror testimony showed that, of the few jurors who heard the comment, all but one testified that the evidence did not impact the conviction. And the court's reasonable determination that Spiers's testimony regarding prejudice was not credible further supported its conclusion that the jury did not convict McGail because of extrinsic evidence.

McGail's challenges to the merits of the state court's decision are unpersuasive. He highlights the religious overtone of the comment as indicative of prejudice. Pet'r's Br. at 21. But the fact that Westgerdes's statement referred to McGail's church attendance does not alone render it prejudicial, particularly considering that the comment referred to McGail's *recent* church attendance, not whether he had *ever* attended St. Patrick's. And contrary to McGail's claim, the length of the jury's deliberations does not mean that Westgerdes's comment was prejudicial where the comment was not discussed by the jury as a whole, and where significant evidence—including testimony from two accomplices implicating McGail—supported the petitioner's conviction. *See Brecht*, 507 U.S. at 639 (considering evidence of guilt to determine whether effect of constitutional error was prejudicial). McGail's arguments, which were considered by the state trial and appellate courts and reasonably rejected, are insufficient to show that he is entitled to habeas relief.

**III.**

We affirm the judgment of the district court.